UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RACHEL WAGNER,
     Petitioner,

v.                                     Case No.:  3:19cv4659/LAC/EMT

MARK S. INCH,
     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Rachel Wagner (Wagner) has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).  Respondent (the State) filed an answer, providing relevant portions of the state court record (ECF No. 14).  Wagner filed a reply (ECF No. 18).

The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Wagner is not entitled to habeas relief.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Wagner challenges the judgment and sentence entered in the Circuit Court in and for Okaloosa County, Florida, Case No. 2015-CF-2503 (ECF No. 1 at 1). Wagner was charged with one count of grand theft (over $100,000) (Ex. A at 18).[1]

On November 14, 2016, Wagner signed a written Plea and Sentencing Agreement (Ex. A at 56–59).  The plea agreement stated Wagner agreed to enter a no contest plea to the offense as charged, with no agreement with the State as to her sentence (*id.*).[2]  The parties presented the plea agreement to the court at a hearing held the next day, November 15, 2016 (*see* Ex. A at 107–15 (transcript of plea hearing)).  The court conducted a colloquy and accepted Wagner's plea (*see id.*).  On January 18, 2017, the court sentenced Wagner to a total term of fifteen years in prison, with a three-year mandatory minimum, followed by term of fifteen years of probation (Ex. A at 88–93 (judgment), 120–43 (transcript of sentencing hearing)).

Wagner appealed the judgment to the Florida First District Court of Appeal (First DCA), Case No. 1D17-449.  Wagner's counsel filed a brief, pursuant to

---

[1]  References to the state court record are to the exhibits submitted by the State with its Answer (ECF No. 14).  When citing the state court record, the court refers to the "Bates stamp" page numbers.

[2]  The plea agreement also encompassed Wagner's charges in two other cases, 2016-CF-814 and 2016-CF-873 (*see* Ex. A at 56).  Wagner does not challenge the criminal judgments in either of those cases in the instant § 2254 petition (*see* ECF No. 1 at 1).

*Anders v. California*, 386 U.S. 738 (1967), asserting that the appeal was without merit (Ex. B).  The First DCA provided Wagner an opportunity to file a pro se initial brief, but she declined to do so (*see* Ex. C (First DCA order providing Wagner an opportunity to file a pro se initial brief and setting a deadline for her to do so)).  The First DCA affirmed the judgment and sentence on July 25 2017, per curiam and without written opinion (Ex. D (opinion)).   *Wagner v. State*, 228 So. 3d 560 (Fla. 1st DCA 2017) (Table).  The mandate issued August 22, 2017 (*see id.* (mandate)).

On September 14, 2017, Wagner filed a motion to reduce or modify sentence in the state circuit court, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. E).  The circuit court summarily denied the motion on December 14, 2017 (Ex. F).

On April 19, 2018, Wagner filed a pro se motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. G at 16–27).  Wagner filed an amended Rule 3.850 motion on August 29, 2018 (*id.* at 31–40).  The circuit court summarily denied Wagner's amended Rule 3.850 motion on January 29, 2019 (*id.* at 46–72).  Wagner appealed the circuit court's decision to the First DCA, Case No. 1D19-1055 (Ex. H (initial brief)).  On July 18, 2019, the First DCA affirmed the circuit court's decision per curiam and

without written opinion (Ex, J (opinion)).  *Wagner v. State*, 275 So. 3d 1184 (Fla. 1st DCA 2019) (Table).  The mandate issued August 15, 2019 (*see id.* (mandate)).

Wagner filed her federal habeas petition on November 7, 2019 (ECF No. 1).

## II.     STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S.

at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the petitioner must

show that she is in custody "in violation of the Constitution or laws and treaties of

the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted

in "actual prejudice," meaning, the error "had a substantial and injurious effect or

influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

## III.   WAGNER'S CLAIMS

**A.   Ground One:  "Ineffective assistance of counsel on [sic] advising defendant to enter a plea of guilt to charges the [S]tate did not have the evidence to prove at trial amounted [sic] to deprivation of the defendant's [S]ixth and [F]ourteenth [A]mendment rights to effective assistance of counsel."**

Wagner alleges her trial counsel advised her that it would be in her best interest to enter a plea rather than take the case to trial, because of the evidence against her (ECF No. 1 at 3–4).  Wagner alleges the only evidence against her was the following:  (1) a statement from the victim, Wade Frank Barnes, that he had $260,000 in his truck; (2) Wagner worked for Mr. Barnes and had a key to his truck; and (3) Wagner assisted law enforcement in recovering $80,700 of the stolen money by informing them that her roommate hid it in a motel room (*id.*).  Wagner alleges if counsel had informed her that the State did not have sufficient evidence to prove that she took Mr. Barnes' money, she would not have entered a plea and instead would have insisted on going to trial (*id.* at 4).  Wagner states she presented this claim to the state courts in her Rule 3.850 motion and her post-conviction appeal (*id.* at 4–5).

The State acknowledges that "it appears" Wagner satisfied the exhaustion requirement by presenting a nearly identical claim in Ground One of her amended Rule 3.850 motion;  but "[i]n an abundance of caution," the State "does not concede or waive the defense of exhaustion" (ECF No. 14 at 22, 26 n.3).  The State contends the state court's adjudication of Ground One was not contrary to or an unreasonable application of clearly established federal law; nor was it based upon an unreasonable determination of fact (*id.* at 22–31).

### 1.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  The petitioner must show (1) counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced her.  *See id.* at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.'   Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).  The two-part test articulated in *Strickland*, applies to claims that counsel was ineffective during the plea process.  *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (applying *Strickland*'s two-part test to habeas

petitioner's claim that counsel was ineffective for advising him to reject a plea offer);

*Missouri v. Frye*, 566 U.S. 134, 140, 147–51 (2012) (applying *Strickland*'s two-part

test to habeas petitioner's claim that counsel was ineffective for failing to

communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S.

52, 58 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his

guilty plea based on ineffective assistance of counsel).

In *Premo v. Moore*, the Supreme Court elaborated on the importance of strict

adherence to the *Strickland* standard in the plea context:

> Failure to respect the latitude *Strickland* requires can create at
> least two problems in the plea context.  First, the potential for the
> distortions and imbalance that can inhere in a hindsight perspective may
> become all too real. . . .
>
> Second, ineffective assistance claims that lack necessary
> foundation may bring instability to the very process the inquiry seeks
> to protect.  *Strickland* allows a defendant "to escape rules of waiver and
> forfeiture," *Richter*, 562 U.S. at 105, 131 S. Ct. 770.  Prosecutors must
> have assurance that a plea will not be undone years later because of
> infidelity to the requirements of AEDPA and the teachings of
> *Strickland*.  The prospect that a plea deal will afterwards be unraveled
> when a court second guesses counsel's decisions while failing to accord
> the latitude *Strickland* mandates or disregarding the structure dictated
> by AEDPA could lead prosecutors to forgo plea bargains that would
> benefit defendants, a result favorable to no one.
>
> Whether before, during, or after trial, when the Sixth
> Amendment applies, the formulation of the standard is the same:
> reasonable competence in representing the accused.  *Strickland*, 466
> U.S. at 688, 104 S. Ct. 2052.  In applying and defining this standard

substantial deference must be accorded to counsel's judgment. *Id.* at 689, 104 S. Ct. 2052.

*Premo v. Moore*, 562 U.S. 115, 124–26 (2011).

*Strickland*'s prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. The defendant must show that there is a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Premo*, 562 U.S. at 129.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the

question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## 2.    Review of State Court's Decision

Wagner presented Ground One as Ground One of her amended Rule 3.850 motion (Ex. G at 33–35). The state circuit court summarily denied the claim for the following reasons:

> Defendant alleges that counsel rendered ineffective assistance for advising her to enter the plea agreement when the State lacked evidence to prove that she was guilty of grand theft of over $100,000. Specifically, Defendant alleges that the State could not have proven beyond a reasonable doubt that she "took any money from the victim" or that the amount of money taken was over $100,000. Defendant alleges that she "did not steal any money from the victim in this case." Defendant asserts that, absent counsel's alleged errors, she would not have entered the plea agreement and would have proceeded to trial.
>
> During the plea colloquy, Defendant stated that she was entering a plea to "the grand larceny and then the failure to appear and the introduction of contraband." Defendant affirmed that she read, understood, and signed the plea agreement. The plea agreement specifically shows that the grand theft charge was for $100,000 or more. Defendant affirmed that she discussed the plea agreement with counsel, counsel answered all of her questions, and she was satisfied with counsel's representation. Defendant affirmed that she understood she was waiving her right to a trial by entering the plea agreement. Defendant affirmed that she believed it was in her best interest to enter the plea. Moreover, Defendant agreed in the plea agreement that she understood she was waiving the right to present any and all defenses. Defendant agreed in the plea agreement that she had reviewed the facts

of her case with counsel and agreed and stipulated that there are sufficient facts available to the State to justify her plea of nolo contendere. Defendant agreed in the plea agreement that the probable cause affidavit is incorporated by reference and agreed to by her as a factual basis for the plea.

The probable cause affidavit alleges the following; the 73-year old victim placed $260,000, consisting of $100 bills stacked in $25,000 stacks, in the tool box attached to the bed of his truck and forgot to transfer the money from his locked tool box to his safe; the victim hired Defendant to "clean out and wash" his truck and provided her with the keys to his truck on that day, which included a key to the tool box; the victim stated that he discovered the $260,000 was missing from the tool box after Defendant promptly left his residence after washing his truck; approximately nine days after the incident, Defendant's roommate stated that he found "multiple large stacks of $100 bills inside of Defendant's laundry basket in her bedroom, approximately ten new pairs of Nike tennis shoes in her bedroom, and "multiple new phone accessories" in her bedroom; Defendant's roommate stated that after he confronted Defendant about the stacks of $100 bills, she became angry and indicated that the money belonged to the victim; Defendant immediately moved out of that residence and paid her new landlord $700, consisting of $100 bills; and when law enforcement confronted Defendant about "'the theft of someone's property," she "immediately told them" that she did not take the victim's money. Further, the probable cause affidavit alleges that Defendant was the only person who had access to the $260,000 at the time it was stolen.

At Defendant's sentencing, the victim testified under oath that he had hired Defendant to perform various tasks around his ranch. The victim stated that Defendant "had run of the house" and used his vehicles. The victim stated that Defendant "financially needed help." The victim affirmed that $260,000 was stolen. The victim stated that after the money was stolen, Defendant "never came back to work."

Accordingly, the Court finds that Defendant's claim is without merit. See § 812.014, Fla. Stat. (2015); State v. Franklin. 669 So. 2d

339, 340 (Fla. 4th DCA 1996) ("A trial court may determine that a factual basis exists for a plea based on a probable cause affidavit."); Kelley v. State, 109 So. 3d 811, 812–13 (Fla. 1st DCA 2013) ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that arc refuted by such representations.").

      Consequently, Ground One is denied. The Court notes that Defendant's assertion that she did not steal any money from the victim is refuted by the record. Indeed, Defendant testified under oath at sentencing that she stole money from the victim, and she apologized to the Court and the victim for committing the crime.

(Ex. G at 48–51) (footnotes citing attached portions of state court record omitted).

As previously noted, Wagner appealed the circuit court's decision to the First DCA, and argued this IATC claim as Issue One (Ex. H at 6–7). The First DCA summarily affirmed the circuit court's decision (Ex. J).

The First DCA's summary affirmance is an "adjudication on the merits" of Wagner's claim, and it is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the

First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing 28 U.S.C. § 2254(e)). Wagner has not done so here. The portions of the state court record attached to the circuit court's order support the state court's findings regarding the evidence available to the State to prove Wagner's guilt of grand theft of over $100,000.[4]

Under Florida law, to prove the crime of grand theft of over $100,000, the State was required to prove beyond a reasonable doubt that Wagner knowingly

---

[4] Indeed, according to the probable cause affidavit and Mr. Barnes' statements during the sentencing hearing, both of which are attached to the state court's decision (*see* Ex. G at 61–63, 67–68), Mr. Barnes described the specifics of the stolen $260,000 (the $100 denominations and how it was stacked) and stated that Wagner had a key to his truck's toolbox where the $260,000 was located. Barnes stated he discovered that the money was missing immediately after Wagner finished cleaning the truck and had left Barnes' residence. Mr. Barnes stated that after that, Wagner never returned to work. Additionally, Wagner's roommate, Mr. Kevin Edge, told detectives that he discovered stacks of $100 bills in Wagner's laundry basket, and he also discovered several new purchases she had made. Mr. Edge told detectives that when he confronted Wagner about the money, she admitted that it belonged to Mr. Barnes.

obtained over $100,000 of Mr. Barnes' money with intent to, either temporarily or permanently (1) deprive Mr. Barnes of a right to the money or a benefit from the money, or (2) appropriate the money to her own use or to the use of any person not entitled to use it. *See* Fla. Stat. § 912.014(1), (2)(a). Where, as here, the evidence against a defendant is purely circumstantial, the State must prove that the evidence is inconsistent with any reasonable hypothesis of innocence. *See State v. Law*, 559 So. 2d 187, 188 (Fla. 1989).

In Wagner's amended Rule 3.850 motion, she admitted she worked for Mr. Barnes and had the keys to his truck (*see* Ex. G at 33). Her hypothesis of innocence was that an acquaintance (co-defendant Jonathan Williams) stole the money (*id.* at 34). Wagner alleged that after her arrest, and upon learning that Mr. Williams was involved in the theft and had hidden the money, Wagner helped law enforcement recover over $16,000 from Mr. Williams' person and $80,700 from a hotel room (*id.* at 34–35).

The state court determined that the evidence available to the State, described *supra*, was sufficient to satisfy the substantive elements of grand theft of over $100,000 under Florida Statutes § 812.014(1), (2)(a). This federal habeas court must defer to the state court's determination of this issue of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

The state court's having determined what evidence was available to the State and having determined that the State's evidence was sufficient to support a conviction under Florida law, fairminded jurists could concur with the state court's conclusion that Wagner's plea was **not** the product of ineffective assistance of counsel due to counsel's failure to advise her that the State did not have sufficient evidence to support a conviction.

Wagner failed to satisfy the § 2254(d) standard as to Ground One. Therefore, she is not entitled to federal habeas relief on this claim.

**B. Ground Two: "[C]ounsel violated the defendant's constitutional amendment sixth [sic] and fourteenth rights [sic] by not giving her effective representation when they advised her to lead the detectives in this case to the hotel that she was informed had the stolen money hidden in it, and if she did so, the charges against her would be dismissed."**

Wagner alleges after she learned that her acquaintance had stolen the money and hidden it in a hotel room, she provided this information to defense counsel (ECF No. 1 at 5–6). Wagner alleges defense counsel advised her that if she led detectives to the location of the money, the charges against her would be dropped (*id.*). Wagner alleges she told detectives where she believed the money was hidden, but the charges were not dropped and instead were upgraded from theft of over $50,000 to theft of over $100,000 (*id.* at 6). Wagner alleges had it not been for counsel's erroneous

advice, she would not have assisted detectives and thereby exposed herself to a more

severe charge (*id.*).  Wagner states she presented this IATC claim to the state courts

in her Rule 3.850 motion and her post-conviction appeal (*id.* at 6–7).

The State acknowledges that "it appears" Wagner satisfied the exhaustion

requirement by presenting a nearly identical claim in Ground Two of her Rule 3.850

motion, but "[i]n an abundance of caution," the State "does not concede or waive the

defense of exhaustion" (ECF No. 14 at 31, 33–34 n.4).  The State contends the state

court's adjudication of Ground Two was not contrary to or an unreasonable

application of clearly established federal law; nor was it based upon an unreasonable

determination of fact (*id.* at 35–39).

### 1.    Clearly Established Federal Law

The *Strickland* standard, set forth *supra*, is the governing legal standard.

### 2.    Review of State Court's Decision

Wagner presented Ground Two as Ground Two of her amended Rule 3.850

motion (Ex. G at 36).  The state circuit court summarily denied the claim for the

following reasons:

> Defendant alleges that counsel rendered ineffective assistance by
> misadvising her that "'the charges" would be dismissed if she directed
> law enforcement to the stolen money.  Defendant states that she
> directed "the detectives to the hotel where she had learned the money
> was," but that "the charges were not dropped."  Defendant states that,

instead, the charges were "upgraded from Grand Theft over $50.000.00 to Grand Theft over $100,000 00." Defendant alleges that, as result, she was exposed "to a much higher degree felony" and "harsher punishment." Defendant alleges that, absent counsel's alleged errors, she would not have assisted law enforcement in recovering the stolen money and that she would not have entered the plea agreement and would have proceeded to trial.

The record indicates that the victim agreed to a reduction of Defendant's bond if she assisted law enforcement in recovering a portion of the stolen money. Nevertheless, even if counsel somehow performed deficiently as to this claim, Defendant has not demonstrated the requisite prejudice. Although Defendant alleges that her assistance to law enforcement resulted in the charges being "upgraded" to "a much higher degree felony" and "harsher punishment," she is incorrect. Indeed, on November 3, 2015, Defendant was arrested for committing grand theft of $50,000 or more from a person 65 years of age or older, which is a first-degree felony, and on November 16, 2015, an information was filed charging Defendant with committing grand theft of $100,000 or more, which is punishable as a first-degree felony. Further, Defendant was aware of the basis for the present claim at the time she entered the plea agreement. In considering Defendant's statements made at the plea colloquy and the agreements made in the plea agreement, as stated in Ground One, the Court finds that Defendant has not demonstrated a reasonable probability that, absent counsel's alleged errors, she would not have entered the plea agreement and would have proceeded to trial. See Kelly v. State, 109 So. 3d 811, 812–13 (Fla. 1st DCA 2013). Consequently, Ground Two is denied.

(Ex. G at 51–52) (footnotes citing attached portions of state court record omitted).

The First DCA summarily affirmed the circuit court's decision (Ex. J).

The state court's rejection of Wagner's claim on the prejudice prong was reasonable. As previously discussed, the federal court must defer to the state court's

determinations of state law issues, including its determination that the offense for which Wagner was arrested (Grand Theft of over $50,000 from a person over 65 years of age, a violation of Florida Statutes § 812.0145(2)(a)) and the offense with which she was charged (Grand Theft of over $100,000, a violation of Florida Statutes § 812.014(1)–(2)(a)) were of equal severity.

Further, as the state court found, Wagner knew at the time she entered her plea that the State had not dropped the charge, yet she chose to enter the plea regardless. In entering her plea, Wagner stated under oath that no one had promised her anything, and no one had forced or coerced her into entering the plea (*see* Ex. G at 56–57). Solemn declarations by a defendant in open court during a plea hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1997); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (stating that there is a strong presumption that the statements that a defendant made during a plea colloquy were true). Wagner's statements under oath during the plea hearing, that her plea was not the product of promises, force, or coercion, could lead a fairminded jurist to reject Wagner's assertion that she was essentially forced to enter a plea by counsel's unfulfilled promise of dismissal of the charge.

Wagner failed to demonstrate that the state court's adjudication of Ground Two was based upon an unreasonable determination of fact, or that it was contrary

to or an unreasonable application of *Strickland*.  Wagner is not entitled to habeas relief on Ground Two.

> **C.     Ground Three:  "Counsel violated the defendant's United States Constitutional amendment [sic] sixth and fourteenth rights [sic] by failing to give her effective representation by failing to investigate all charges and discovery [sic] evidence in this case prior to advising the defendant to enter a guilty plea."**

Wagner alleges defense counsel failed to investigate the case and inform her that there was insufficient evidence to support a conviction (ECF No. 1 at 7–8).  Wagner alleges there was no evidence of (1) a theft, (2) that she committed the theft, (3) that the amount stolen was over $100,000, or (4) that she was ever in possession of Mr. Barnes' money (*id.*).  Wagner alleges if defense counsel had investigated the evidence and informed her that it was insufficient to support a conviction, she would not have entered the plea (*id.* at 8).  Wagner states she presented this IATC claim to the state courts in her Rule 3.850 motion and her post-conviction appeal (*id.* at 8).

Again, the State acknowledges that "it appears" Wagner satisfied the exhaustion requirement by presenting a nearly identical claim in Ground Three of her Rule 3.850 motion, but "[i]n an abundance of caution," the State "does not concede or waive the defense of exhaustion" (ECF No. 14 at 40, 42–43 n.6).  The State contends the state court's adjudication of Ground Three was not contrary to or

an unreasonable application of clearly established federal law; nor was it based upon

an unreasonable determination of fact (*id.* at 44–46).

### 1.    Clearly Established Federal Law

The *Strickland* standard, set forth *supra*, is the governing legal standard.

### 2.    Review of State Court's Decision

Wagner presented Ground Three as Ground Three of her amended Rule 3.850

motion (Ex. G at 37).  The state circuit court summarily denied the claim for the

following reasons:

> Defendant alleges that counsel rendered ineffective assistance by failing to investigate "all charges and discovery evidence in this case" and for failing to advise Defendant that she had "a viable defense" to grand theft of over $100,000.  Defendant states that she "had a valid defense" that there was no evidence that a theft had occurred, that Defendant committed the theft, that the amount of stolen money was over $100,000, or that Defendant was in possession of "any money whatsoever" belonging to the victim.  Defendant alleges that $16,216 "was found" with the codefendant and that, consequently, "the evidence against the co-defendant was damning."  Defendant alleges that had counsel advised her that she had a viable defense, she would not have entered the plea agreement and would have proceeded to trial.

> The Court finds that there is not a reasonable probability that, absent counsel's alleged errors, Defendant would not have entered the plea agreement and would have proceeded to trial.  Defendant's allegations that there was no evidence that a theft had occurred, that Defendant committed the theft, that the amount of stolen money was over $100,000, or that Defendant was in possession of "any money whatsoever" belonging to the victim are not well-taken based on the statements alleged in the probable cause affidavit, as stated in Ground

One.  Although Defendant asserts that "the evidence against the co-
defendant was damning" because $16,216 "was found" with the
codefendant, Defendant has not shown an entitlement to relief based on
the statements alleged in the probable cause affidavit, including the
allegations that $260,000 was stolen, the victim provided the key to the
tool box to the Defendant, and Defendant was the only person who had
access to the $260,000 at the time it was stolen.  In considering the
statements alleged in the probable cause affidavit, as stated in Ground
One, and Defendant's statements made at the plea colloquy and the
agreements made in the plea agreement, as stated in Ground One,
Defendant is not entitled to relief.  Consequently, Ground Three is
denied.

(Ex. G at 52–53) (footnotes citing attached portions of state court record omitted).

The First DCA summarily affirmed the circuit court's decision (Ex. J).

Accepting the state court's factual findings with respect to the evidence

available to the State (as laid out in the probable cause affidavit and Mr. Barnes'

statements during Wagner's sentencing), and deferring to the state court's state-law

based determination that the evidence available to the State was sufficient to support

a conviction under Florida Statutes § 812.014(1), (2)(a), the state court reasonably

rejected Wagner's claim that her plea was the product of counsel's failure to

investigate the evidence and advise her that she had a viable defense (i.e., insufficient

evidence to support a conviction).

Wagner has not demonstrated that the state court's adjudication of Ground

Three was based upon an unreasonable determination of the facts, or that it was

contrary to or an unreasonable application of *Strickland*.  Wagner is thus not entitled to federal habeas relief on Ground Three.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Case No.:  3:19cv4659/LAC/EMT

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of December 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**